The Commercial Bank of Arcadia in Liquidation instituted this suit through the State Banking Commissioner against R.G. Dance seeking to recover on a promissory note executed by Dance in the sum of $780, with eight per cent per annum interest from April 1, 1934, until paid and for ten per cent attorney's fees thereon. Petitioner alleged that in the liquidation proceedings of said banking corporation P.E. Brown was made the Special Agent of the Liquidator, the State Banking Commissioner. Petitioner further alleged that the note sued on was executed by Dance on January 4, 1934 and made payable April 1, 1934, and that on December 20, 1938 Dance duly acknowledged the note in writing on the back thereof. Petitioner also alleged it was the owner and holder for a legal consideration of the note before maturity.
Defendant admitted executing the note and alleged that on February 11, 1943 one D.S. Kendrick bought from the Bank all the indebtedness due by the defendant to said Bank; that the agreed amount was paid to plaintiff and it cancelled all the indebtedness of defendant to plaintiff. The defense which was made without objection is that by agreement between the Special Agent and Dance and Kendrick the Special Agent agreed to accept a specified amount of money, to-wit, $500 and one-fourth of the minerals on lands owned by defendant in full settlement of all defendant's indebtedness to the Bank; that the money was paid by Kendrick and the mineral deed executed and accepted by the Liquidator and that this settlement covered the indebtedness evidenced by the note sued on here. The lower court sustained the defense and rejected plaintiff's demands from which judgment it is now prosecuting this appeal.
The record discloses that in 1933 and 1934 Mr. Dance executed to the Bank of Commerce of Arcadia five promissory notes in the following sums: $130, $193, $202, $3,500 and $780. All of the notes, with the exception of the one for $202 were executed *Page 479 
on the same date, to-wit, January 4, 1934, and made payable on the same date, to-wit, April 1, 1934. A second mortgage note on defendant's land, some 242 acres, in the sum of $5,000 was put up as collateral to the $3,500 note. The Federal Land Bank held the first mortgage on the land. The five notes were kept alive by acknowledgment in writing made by defendant on the back of said notes.
On December 17, 1942 the Liquidator of said Bank filed suit against Dance on four of said notes and the note sued on here was not included. Dance sought help from Kendrick, who had in the meantime acquired the first mortgage note held by the Federal Land Bank. They immediately went to Mr. Dance's attorney and sought his assistance in adjusting by compromise or settlement all of Dance's obligations to the Bank. Kendrick was interested because of the second mortgage held by the Bank against the property on which he held a first mortgage and no doubt under which he expected to acquire the property in fee. Dance's attorney immediately contacted the Special Agent, Mr. Brown, who was also attorney for the Bank in Liquidation, and he in turn took the matter up with the Board of Directors of the Realty Corporation, which was owned by the Bank and which owned all the real estate acquired by or through the Bank, who was familiar with the property owned by Dance and the amount of the First mortgage against it, and decided that the Bank's equity in the property under its second mortgage held as collateral was approximately $1,000.
The land at that time had considerable potential mineral value. Mr. Brown, as Special Agent, proposed a settlement of $500 cash and one-fourth of the minerals in and under the property, which settlement and offer were accepted by Dance and Kendrick and Kendrick paid the money and the mineral deed was executed to the Bank in Liquidation. There was not at the time any subordination of the mortgages held by Kendrick to the mineral sale and at a later date the Special Agent for the Bank realized that without such a subordination the minerals were worthless and could not be sold. He then filed a suit alleging that in the settlement it was agreed that the minerals transferred by Dance would be unencumbered and prayed for specific performance of that part of the agreement. After trial the lower court awarded judgment freeing the minerals of any encumbrance due to the mortgage held by Kendrick and that judgment is final.
[1, 2] The record makes it clear and puts it beyond dispute that when the Special Agent made the offer of settlement which was accepted and carried out, Dance and Kendrick, as well as the Special Agent, thought it was and intended it to be a complete settlement of all indebtedness of Dance to the Bank. There was never any discussion or thought on the part of anyone concerned to make settlement of the four notes involved in the suit and leave outstanding the fifth note sued on here. After the agreement to settle had been reached, the Special Agent proceeded to close it out at a time when Dance's attorney was absent and, in giving Kendrick a receipt for the money paid, wrote in settlement or compromise of Suit No. 12,650. This was not with the knowledge or consent of Kendrick or Dance who believed and were told by the Special Agent that the settlement covered all indebtedness to the Bank. The Special Agent contends now that even if he did make a settlement of all the indebtedness of Dance, he was without authority to do so and it is not binding on his principal. His principal held him out to the public as one having authority to handle the affairs of liquidating the Bank. The public acted accordingly and his principal has received the $500 cash paid by Kendrick and the $375 received from the sale of the one-fourth minerals. His principal has received all the benefits derived from the agent's acts and cannot now come into court and say, — "I repudiate my agent's acts as unauthorized but will keep and hold those benefits I derived from them".
We are of the opinion that if defendant's attorney had been present when the settlement was consummated, as testified by him, there would never have been any further litigation. He knew the agreement and would have had the subrogation of the mortgages to the minerals executed and the receipt to cover all indebtedness of Dance to the Bank. That was the agreement between the parties and so long as plaintiff continues to receive and hold the benefits it derived from that settlement, it cannot deprive defendant of the benefits he received therefrom.
The judgment of the lower court is therefore affirmed, with costs. *Page 480